UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>v.<br><br>RAY PERALES,<br><br>                  Defendant. | Case No. 1:17-cr-00245-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

This matter comes before the Court on Defendant's Motion to Suppress. Dkt. 41. Ray Perales asserts that his Fourth, Fifth, and Fourteenth Amendment rights were violated by law enforcement during a parole violation arrest, a home search and subsequent questioning by detectives. Perales seeks to suppress the evidence law enforcement collected during this allegedly unconstitutional search and seizure. The Court held oral argument on the Motion on April 30, 2018. For the reasons outlined below, the Court finds good cause to DENY the Motion.

## II. BACKGROUND

On April 29, 2013, Ray Perales (hereinafter, Perales) was convicted of the felony crime of attempted strangulation in the Fourth Judicial District, Ada County. He served

two years of a fifteen-year sentence and was released on parole on or about September 27, 2016.

Perales' parole officer ("PO"), Darci Dickinson, received information that Perales may have violated his parole by allegedly making threats to kill or shoot another person on Facebook. After confirming that this message came from Perales' Facebook account, PO Dickinson issued an Agent's Warrant. On July 19, 2017, PO Dickinson requested the assistance of Caldwell police to arrest Perales on the Agent's Warrant for violating his parole.

When Perales arrived at Recovery 4 Life, a treatment provider located in Caldwell, Idaho, Caldwell Police Officer, Klayton Duin and PO Dickinson were waiting for him. Officer Duin then placed Perales under arrest. PO Dickinson explained to Perales that she was arresting him for violating his parole. During a search of Perales, Officer Duin found a set of keys in Perales' pocket. When he came to the key with the Honda emblem, Duin asked Perales how he "got here." Perales said he walked, as his house was only a couple blocks away. Officer Duin then said, "so there's not going to be a Honda out here?" Perales then admitted that he drove the Honda to Recovery 4 Life. Officer Duin asked Perales a series of questions about the car and then asked if he could search the car. Perales said, "sure." As Officer Duin was walking outside to search the car, Perales said his "money is in there."

During the search of the Honda, Officer Duin found in the center console a Mexican passport belonging to Perales' co-defendant, Ricardo Renteria and

approximately $13,300 in cash. The money was in various denominations including $100, $50, $20, $10 and $5.

Because of the discovery of the money and the passport, PO Dickinson asked Caldwell Police officers to assist her with a search of Perales' residence. Prior to searching the house, PO Dickinson told Perales that the officers were going to search his house. Perales replied, "not without a warrant." Based on his parole condition, PO Dickinson said she already had approval from her supervisor to do a home search. Caldwell Detective Ben Heinrich asked Perales if there was anyone else in the house, and whether there would be any guns, booby-traps, or other things in the house they should be aware of before they conducted the search. Perales said no, but explained that his girlfriend (or ex-girlfriend), Vanessa Whalen, had a key to the residence and kept some personal belongings there. After Detective Heinrich left, Perales told PO Dickinson that there might be a gun at the residence because his ex-girlfriend had left a .380 handgun there, but it should be gone.

During the search of the residence, Officer Heinrich found a loaded Hi-Point .380 pistol under a pillow on the bed, an ammunition magazine and ten rounds of ammunition.

After Perales' arrest on the Agent's Warrant, the subsequent search of the Honda and Perales' home, Officer Duin called agents with the Drug Enforcement Agency ("DEA"). Special Agents Michael Williams and Coy Bruner responded to the Caldwell Police Department's request to interview Perales, which was audio recorded. When the DEA agents first walked in, Perales said he had nothing to say and that he would rather

MEMORANDUM DECISION AND ORDER - 3

speak to an attorney. Agent Williams explained that Perales was part of a drug investigation and they were offering him a chance to help himself. Perales was provided with a written *Miranda* form that explained his rights. He was asked to read his rights out loud and then sign the *Miranda* form. After Perales signed the form, he made several comments and then advised that he wanted to speak with his attorney. The interview then ended.

On August 7, 2017, Agents Williams and Bruner submitted an Affidavit in support of a search warrant to search a "stash house" in Homedale, Idaho. The Government claims that the Affidavit includes information that Williams had received regarding Perales' distribution of methamphetamine. The Affidavit outlines three different persons that provided information about Perales' drug sales. A confidential source ("CS"), a cooperating defendant ("CD1"), and field agents who observed a vehicle, registered to Perales, parked at the "stash house."

Investigators executed the warrant on August 9, 2017. During the search, they found co-defendant Renteria and another individual, Matias Gil, at the stash house. They also found approximately five pounds of methamphetamine, $18,231 in cash, and a digital scale.

Perales has been charged with one count of Conspiracy to Distribute a Controlled Substance and One Count of Unlawful Possession of a Firearm. Perales seeks to suppress all the statements he made to law enforcement and parole officers, the money and passport that Officer Duin found during the search of the Honda, the firearm, magazine and

ammunition found during the apartment search, and the drugs and money discovered at the Homedale trailer.

### III. DISCUSSION

1. **Did Officer Duin violate Perales' Fifth Amendment rights when he was questioned in the absence of *Miranda* warnings?**

    a. **Legal Standard**

*Miranda* warnings are given to an individual who is subjected to custodial police interrogation to assure that the individual is afforded the privilege under the Fifth Amendment to the Constitution to not incriminate himself. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In the absence of *Miranda* warnings, the Court must suppress any statements made in a custodial interrogation.

    b. **Analysis**

Perales argues the Court must suppress statements he made to Officer Duin because Duin's questioning constituted a custodial police interrogation undertaken without first giving the requisite *Miranda* warnings. While it is true that Perales was in custody, he was not being interrogated. In determining whether an interrogation occurred, a court must analyze whether Perales was subject to questioning that would reasonably illicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).Here, Both PO Dickinson and Officer Duin had no reason to believe that the questions being asked of Perales would illicit an incriminating response.

A review of the video[1] of Perales' arrest reveals that officers told him why they were arresting him and conducted a search of his person before handcuffing him. They placed the articles found on his person in a clear plastic bag. While Officer Duin was reviewing the articles in the plastic bag, he came across a set of keys. After Perales "volunteered" his statement of why he thought he was being arrested and the circumstances surrounding his arrest, Officer Duin asked him if he drove his jeep to the treatment center. Perales said he walked there as he only lived a couple blocks away. Officer Duin then said, "so I am not going to find a Honda in the parking lot?" Perales then said yes. Officer Duin asked if anyone was in the car with him and to whom the car belonged. After answering those questions, Officer Duin asked for permission to search the car. Perales said, "sure."

Both defense counsel and the Government cite to *United States v. Henley*, 984 F.2d 1040 (9th Cir. 1993). *Henley* involved a case where a bank was robbed and the robber drove a 1974 Plymouth Duster. Henley, a suspect in the robbery, was handcuffed and put into a patrol car. There, without Mirandizing him, an FBI agent asked him if he owned the Duster. Henley said he did and consented to a search of the car. They found items connected to another robbery, for which he was charged and convicted. On appeal, the Ninth Circuit found a *Miranda* violation that required suppression of statements indicating ownership.

Perales argues that this case is like *Henley*.

---

[1] Exhibit 2 to the Government's Memorandum in Opposition to Defendant's Motion to Suppress.

> Consistent with the information that he had from PO Dickinson and from the agent's warrant, Officer Duin – a police officer, not a parole officer – was investigating the possibility that Perales had made criminal threats, and possibly that he had also committed drug crimes. Much like the FBI agent in *Henley*, Duin's intent was to search any car that Perales drove to Recovery 4 Life for evidence and to establish possession of the car to link him to incriminating evidence that he found. Perales answers showing possession and use were incriminating.

*Memo in Support*, Dkt. 41-1, at 10.

The Government argues that this case is unlike *Henley*.

> Our case is unlike *Henley*, because Officer Duin had no reason to believe that the Honda driven by the Defendant was involved in any crime or contained any contraband. The Defendant was arrested on a parole violation for threatening another person. Officer Duin had no reason to believe that the Defendant would incriminate himself by answering the question about whether the Defendant drove the Honda. The Defendant was arrested at the treatment provider's facility and would not be taking his car with him when he left. Officer Duin inquired about the vehicle to determine whether police would need to tow the vehicle or notify the treatment provider that the vehicle was left on the premises until someone could retrieve it. Under these circumstances, Officer Duin's questions did not amount to an interrogation.

*Memo in Opp.*, Dkt. 50 at 8.

The Court is persuaded by the Government's argues that this case is distinguishable from *Henley*. Officer Duin had no reason to believe that the Honda driven by Perales was involved in any illegal activity. Perales' vehicle was a Jeep. Any questions about the vehicle equate to questions that a booking officer would ask when trying to determine if a defendant either had property on his person or a vehicle in the parking lot. Booking questions do not amount to an "interrogation" if the Officer has no reason to believe that those answers would be incriminating. *See United States v.*

MEMORANDUM DECISION AND ORDER - 7

*Salgado*, 292 F.3d 1169, 1173 (9th Cir. 2002). The Court finds that Officer Duin was not interrogating Perales. Because he was not interrogating Perales, Officer Duin did not need to *Mirandize* him. Therefore, the Court will not suppress these statements.

  **2. Was the warrantless search of the apartment unreasonable under the Fourth Amendment?**

    **a. Legal Standard**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amendment 4. A lesser degree of certainty satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. *See Terry v. Ohio*, 392 U.S. 1(1968). Those interests warrant a lesser than probable-cause standard. When an officer has a reasonable suspicion that a probationer or parolee subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's or parolee's significantly diminished privacy interests is reasonable. *United States v. Knights*, 534 U.S. 112 (2001). If the Court determines that the warrantless search was unreasonable, then the Court must suppress the firearm, magazine and ammunition found during the apartment search.

    **b. Analysis**

Perales argues that "[s]earches conducted without a warrant [] are per se unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions." *United States v. Scott*, 705 F.3d 410, 416

(9th Cir. 2012). The burden is on the government to establish that a warrantless search falls into one of the narrow exceptions to this general rule. *Id*.

The Ninth Circuit has recently reaffirmed that a parolee has significantly diminished privacy interests compared to a regular defendant. *United States v. Johnson*, 875 F.3d 1265, 1273 (9th Cir. 2017). Here, PO Dickinson received information that Perales had made a threat to harm or kill another person. Perales was on parole for an aggravated assault. It was reasonable for her to instigate a search based on information she received about the threat as well as the evidence obtained during the search of the Honda.

Perales further argues that he did not give consent to search his home and "withdrew" his consent when he told PO Dickinson that she could not search the home without a warrant. Perales' argument fails because as a term of his parole, he agreed and initialed condition 8 of his conditions of parole, which states:

> Parolee will submit to a search of person or property, to include residence and vehicle, at any time and place by any agent of Field and Community Services and s/he does waive constitutional rights to be free from such searching.

*See Government's Memo in Opp.*, Dkt. 50, Exhibit 1, ¶ 8.

Perales cannot now unilaterally "withdraw" his consent with the expectation that his only ramification of withdrawing that consent would be a violation brought up at a parole revocation hearing. The search of Perales' apartment did not violate the Fourth Amendment and thus any evidence gathered during the search does not need to be suppressed.

3. **Should the Court suppress all statements Perales made about the gun after he was taken into custody as violations of the Fifth Amendment?**

   a. **Legal Standard**

   As stated previously, *Miranda* warnings are given to an individual who is subjected to custodial police interrogation assuring that the individual is afforded the privilege under the Fifth Amendment to the Constitution to not incriminate himself. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In the absence of *Miranda* warnings, the Court must suppress any statements made in a custodial interrogation.

   b. **Analysis**

   The first issue the Court needs to address are the statements made by Perales in response to Caldwell Officer Heinrich's questions about his residence. The Government has stated that they will not seek to admit any statements made by Perales in response to Caldwell Officer Heinrich's questions about his residence. Thus, the Court will not admit those statements.

   The next issue here is whether the Court should suppress the statement Perales made to PO Dickinson about the gun in his residence.

   Perales was in a holding room with PO Dickinson waiting to be transported to his residence for the home search when he made the statements at issue. After Officer Heinrich left the room, Perales offered the information about the gun to PO Dickinson. Perales did not offer the information in response to a question posed by PO Dickinson. Such voluntary statements are not covered by *Miranda*. *United States v. Moreno-Flores*, 33 F.3d 1164 (9th Cir. 1994).

The Court finds that this statement was a volunteered statement and was not in response to any question posed by PO Dickinson. It will not be suppressed.

Next, the Court addresses the interaction between Perales and Special Agent Williams and TFO Bruner. Perales argues that because he had already invoked his right to counsel, any statements he made to Williams and Bruner should be suppressed because it is a violation of his Fifth Amendment right.

The Government argues that Williams and Bruner sought to question Perales' other criminal activity, his drug dealing, not the firearm. The interactions were separated in time and place. The initial questioning occurred at a treatment provider, while the later occurred at the Caldwell police department. Moreover, the identity of the interviewers was different.

Following the home search, the Defendant was transported to the Caldwell Police Department. Agent Williams and TFO Bruner went in to speak with Perales. Immediately and prior to reading him *Miranda* rights, Perales invoked his right to counsel. However, he continued to speak. Agent Williams then provided Perales with a *Miranda* rights waiver form and had him read the questions out loud.

The Government acknowledges that Perales asked for a lawyer and is not seeking to admit any statements Perales made in response to questioning. Any remaining statements Perales made during the interview were "volunteered statements" and will not be suppressed. Any statements made to Officer Duin regarding the firearm in response to questioning **after** the Williams interview will be suppressed.

4. **Did the Magistrate Judge have probable cause to issue the Search Warrant for the Homedale Trailer?**

   a. **Legal Standard**

   A Magistrate Judge must have probable cause/a substantial basis in order to issue a search warrant. To decide whether the magistrate judge had a substantial basis for issuing the search warrant, the Court must ascertain what information was properly before the magistrate judge. *United States v. Grandstaff*, 813 F.2d 1353, 1355 (9th Cir. 1987).

   b. **Analysis**

   The Affidavit submitted to the Magistrate Judge, even if the Court purged any allegedly illegally obtained information, would still have shown that the government received information from three difference sources that criminal activity was "going on" in the mobile home trailer. Specifically, a confidential source and a CD1 (cooperating defendant) provided information, and field agents observed a vehicle registered to the Defendant parked at the "stash house." Therefore, the Court finds that there would still be probable cause for the Magistrate Judge to issue a Search Warrant. The Court will not suppress the evidence obtained during the execution of the Search Warrant at the Homedale Trailer.

///
///
///
///
///

# ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Suppress (Dkt. 41) is **DENIED**.

DATED: June 11, 2018

_____
David C. Nye
U.S. District Court Judge