UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RAY PERALES,<br><br>    Defendant. | Case No. 1:17-cr-00245-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court is Defendant Ray Perales's Motion to Reduce Sentence. Dkt. 106. Perales also filed a Motion to Appoint Counsel (Dkt. 108) and a Supplemental Affidavit in support of his Motion to Reduce Sentence (Dkt. 109). The Government did not respond to any of Perales's filings.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] Upon review, and for the reasons set forth below, the Court DENIES Perales's Motion.

# II. BACKGROUND

On May 29, 2018, Perales entered a plea of guilty—pursuant to a plea agreement—

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

to one count of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Dkt. 59. As part of the agreement, Perales also admitted that at the time of the offense, he had been convicted of one prior felony drug offense which enhanced his sentence. *Id*. On October 9, 2018, the Court sentenced Perales to 262 months of incarceration. Dkt. 81. Perales is currently incarcerated at the Federal Correctional Institution in Sheridan Oregon ("FCI Sheridan") and has a projected release date of September 25, 2036.

On September 5, 2023, Perales filed a Motion to Reduce Sentence. Dkt. 106. Perales's Motion is virtually identical to other motions the Court has recently received from inmates housed at FCI Sheridan. This form motion—that, as will be explained below, was likely written by another inmate—alleges problematic conditions at FCI Sheridan because of the COVID-19 pandemic and requests a reduction in Perales's sentence. *See generally* Dkt. 106, at 1–4. Perales subsequently requested Counsel because he is "not skilled in the law . . . ." Dkt. 108. Finally, Perales filed a handwritten supplement outlining seven additional reasons he believes a sentence reduction is appropriate in his case. Dkt. 109.

### III. LEGAL STANDARD

Perales seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances. In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with

MEMORANDUM DECISION AND ORDER - 2

applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

The policy statements at U.S.S.G. § 1B1.13 state that "extraordinary and compelling reasons" include: (1) a defendant's serious medical condition; (2) a defendant's age combined with serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering abuse by an employee or contractor of the Bureau of Prisons (the "BOP"); (5) the defendant's subjection to an unusually long sentence where the defendant has already served at least ten years of the sentence; or (6) any other circumstance or combination of circumstances of similar gravity. *Id.* at § 1B1.13(b). The statements also assert that, before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id.* at § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—and not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). To be sure, district courts were free

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

to consult the statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments, U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). Along with its sister district courts in the Ninth Circuit, the Court understands these amendments to resolve the discrepancy highlighted in *Aruda* and to make U.S.S.G § 1B1.13 binding. *See United States v. Brugnara*, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024); *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *United States v. Cunningham*, 2024 WL 50908 (D. Mont. Jan. 4, 2024); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023).

In any event, the catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling reason.

### IV. DISCUSSION

**A. Exhaustion of Administrative Remedies**

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

In his form Motion, Perales claims he submitted a "cop-out" to the Warden at FCI

Sheridan on July 22, 2023. Dkt. 106, at 1. Perales did not include a copy of his purported request in conjunction with his motion. Additionally, based upon the Court's review of this case (and others), it is not convinced Perales submitted anything to the Warden at FCI Sheridan.

As noted above, the Court is dealing with multiple motions from individuals at FCI Sheridan bringing similar claims. While Perales's form is slightly different from others the Court has seen, the language is almost identical. And unlike other cases where the Government confirmed with FCI Sheridan that the Warden did not receive any individualized request from Perales, it did not do so in this case. Thus, while Perales has not submitted documentation confirming he has exhausted his administrative remedies—and the Court is inclined to think he has not based upon its recent experience—it will nevertheless assume exhaustion and continue on to the next stage of its inquiry.

### B. Extraordinary and Compelling Reasons

The Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Perales's sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Perales bears the burden of establishing that extraordinary and compelling reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

The real problem in this case is Perales provides *nothing* concrete in support of his Motion. As already noted, it is a form motion that broadly speaks to the conditions of his incarceration. This generic information about conditions at FCI Sheridan is insufficient to

carry Perales's burden that he *personally* is experiencing any extraordinary and compelling circumstances that may warrant release. The Court will not consider the information therein.

That said, in his supplemental affidavit, Perales identifies seven additional reasons he feels are "extraordinary and compelling" and support a reduction in his sentence. Dkt. 109. The Court will briefly address each.

First, Perales asserts that, under changes implemented in the First Step Act, he would no longer be subject to a 20-year mandatory minimum for his crime. *Id*. at 1. While it is true that the applicable mandatory minimum dropped from 20 years to 15 years,[3] such is irrelevant because the First Step Act *was not* made retroactive.[4] Thus the change does not apply to Perales. What's more, even if the Court could consider the new mandatory minimum of 15 years, it would not change Perales's guideline range. Perales received multiple "enhancements" for his conduct in this case, including the "career criminal" enhancement which bumped him to a category six criminal history, resulting in a guideline range of 360 months to life (well above any 10-, 15-, or even 20-year mandatory minimum). Even if the Court took away the career offender status, the guideline range would have been 292–365 months. And even if the court were to account for the discrepancy between mixed and actual methamphetamine—more on that in a moment—Perales's range would

---

[3] Perales contends the applicable range dropped to 10 years. While some mandatory minimums did drop to 10 years, the one applicable to Perales's crime dropped to 15 years. *See* 21 U.S.C. § 841(b)(1)(A)(viii).

[4] From a highly technical standpoint, certain portions of the First Step Act *were* retroactive. Under § 404(b), a court could reduce sentences under a retroactive application of the Fair Sentencing Act of 2010 if the crime was committed before 2010 and other requirements were met. Perales's crime (and sentencing) occurred after 2010 and none of those provisions are at issue here.

MEMORANDUM DECISION AND ORDER - 6

have been 210–262 months. Thus, the Court's sentence of 262 months is squarely within the guideline range any way you slice it. And critically, the Court's sentence of 262 months is *higher* than any 15 year (180 month) mandatory minimum. In short, the First Step Act does not apply here, nor would it help Perales even if applicable. It cannot be used as a basis for a reduction.

Second, Perales contends the Court should have used the guidelines related to mixed methamphetamine as opposed to actual methamphetamine in sentencing. As the Court discussed at Perales's sentencing, its *standard* policy is to use the mixed methamphetamine guidelines in these types of cases.[5] However, as the Court also explained, the mentality behind that approach accounts for disparity in testing and the fact that most defendants charged with drug crimes are users; addicts who buy and sell drugs to support their personal habit. The Court felt that the quantity of drugs Perales was moving was significant enough to indicate he was not simply a drug user, but likely higher up "the chain." In any event, the decision to apply the mixed or actual guidelines is discretionary.[6] This is not a sufficient reason to reduce Perales's sentence.

Perales's third argument is not for release, but a request that the Court give him credit for 510 days that he claims he otherwise would have earned had FCI Sheridan not been under COVID protocols and lockdowns. The Court appreciates that the COVID-19

---

[5] Neither party ordered the transcript in this case. Thus, it is not part of the official record. The Court has, however, reviewed the transcript and has accurately summarized the discussion that took place that day.

[6] In his supplement, Perales submitted a copy of a District Court decision from Mississippi. Dkt. 109-1, at 5–8. While the Court generally agrees with that Judge's analysis regarding the disparity in methamphetamine guidelines—and often takes a similar approach—that decision is not binding on the Court.

MEMORANDUM DECISION AND ORDER - 7

pandemic was difficult—especially for incarcerated individuals—but those difficulties alone do not warrant a reduction in sentence. What's more, the BOP calculates credit for time served, credit for attending treatment, credit for "good time," and all other calculations dealing with an inmate's sentence, not the Court.

Perales's fourth, fifth, and seventh arguments revolve around conditions at FCI Sheridan and how they were unbearable during the initial stages of COVID-19. This hearkens back to the Court's findings as it relates to the template portion of Perales's motion. To reiterate, general allegations of difficult conditions of confinement do not qualify as extraordinary and compelling reasons justifying an early release. The Court needs specific information about Perales's conditions.

Perales's sixth point is that he is employed at FCI Sheridan as a G.E.D. tutor and an English Second Language tutor. The Court applauds Perales for these efforts and encourages him to continue. That said, working while incarcerated cannot serve as the basis for a reduction in sentence.

Finally, the Court would note that the 18 U.S.C. § 3553(a) factors weigh against Perales's release at this time.[7] As outlined in the Presentence Investigation Report, Perales

---

[7] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

MEMORANDUM DECISION AND ORDER - 8

has a long criminal history involving drugs. Dkt. 79. Perales's sentence was as high as it was specifically because of this history. The Court maintains the public is best protected by Perales's continued incarceration at this time.

Finally, with respect to Perales's request for appointment of counsel (Dkt. 108), there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). Instead, the decision whether to appoint counsel in post-conviction proceedings (including requests for compassionate release) rests with the discretion of the district court. *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005). In this case, the Court has reviewed the materials and does not find any circumstances warranting the appointment of Counsel. Accordingly, the Court DENIES Perales's request to appoint counsel.

## V. CONCLUSION

In sum, the Court assumes Perales has exhausted his administrative remedies despite its suspicions otherwise. Regardless, Perales has failed to demonstrate an "extraordinary and compelling reason" for his release, and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release

---

       (C) to protect the public from further crimes of the defendant; and

       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

MEMORANDUM DECISION AND ORDER - 9

Perales at this time. Accordingly, the Court must DENY Perales's motion.

## VI. ORDER

The Court HEREBY ORDERS:

1. Perales's Motion to Reduce Sentence (Dkt. 106) is DENIED.

2. Perales's Motion to Appoint Counsel (Dkt. 108) is DENIED.

DATED: March 18, 2024

David C. Nye
Chief U.S. District Court Judge